

**SIGNED this 01st day of November, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-10268-CAG |
| | § | |
| DENNIS MICHAEL ANTOLIK, | § | CHAPTER 12 |
| Debtor. | § | |

| | | |
|---|---|---|
| DENNIS JASEK, | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 12-01079- CAG |
| v. | § | |
| | § | |
| DENNIS MICHAEL ANTOLIK, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION DENYING THE PLAINTIFF'S
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Came on to be considered for trial on September 12 and 20, 2012, the Plaintiff's Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2, 4, and 6). For the reasons stated herein, the Court finds that the Defendant's debt to Plaintiff is deemed dischargeable and Plaintiff is awarded a take nothing judgment against Defendant.

As an initial matter, the Court finds that it has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and § 1334. This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(I) (determination of discharge of particular debts). The Court finds venue is proper under 28 U.S.C. § 1408(1). This matter is referred to the Court pursuant to the District's Standing Order on Reference. The Court may make its findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

Dennis Antolik ("Debtor" or "Defendant") filed a Chapter 12 petition for relief on February 7, 2012. Defendant is the 100% owner of Cheval Manor, Inc. Cheval Manor, Inc. is described as a horse farm which includes stables for horses, riding lessons, pastures, and related facilities for the training and upkeep of horses. Cheval Farm, Inc. filed its own Chapter 12 petition (Bankruptcy No. 12-10269) on February 7, 2012. Although the Antolik and Cheval Manor, Inc. cases are not being jointly administered, both debtors have proposed Chapter 12 plans of reorganization that contemplate a restructuring of debt.

Plaintiff Dennis Jasek is the former brother-in-law of Defendant. During the time period in which Antolik and Plaintiff's sister – Diane Jasek – were involved in a divorce proceeding, Plaintiff asserted that he was owed money for his contributions to the operation of Cheval Manor. As a result, all three parties entered into a handwritten settlement agreement ("Settlement Agreement" or "Agreement") which provided that Plaintiff was to be paid $45,000 and receive two lots in satisfaction of his purported contributions to Cheval Manor.

Defendant failed to pay Plaintiff the money or convey the lots to Plaintiffs. Thereafter, Plaintiff filed suit in state district court to enforce the Settlement Agreement. Plaintiff alleged breach of contract and fraud in his state court petition. Plaintiff moved for partial summary

judgment on his breach of contract count. The state district court granted partial summary judgment and, as a result, Jasek non-suited his fraud causes of action. When Jasek attempted to enforce the judgment, Antolik filed Chapter 12.

**FINDINGS OF FACT**

The following constitutes the Court's findings of fact:

1. Cheval Manor, Inc. was incorporated on February 15, 1995.

2. Dennis Michael Antolik was married to Diane Jasek.

3. Plaintiff Dennis Jasek is the brother of Diane Jasek.

4. In 2005, Diane Jasek initiated a divorce proceeding against Dennis M. Antolik in Case No. D-1-FM-05-001903 in the District Court of Travis County, Texas.

5. At the time of the divorce proceeding, Diane Jasek was the sole shareholder of Cheval Manor, Inc.

6. Shortly before the divorce action was set for trial, Dennis Jasek threatened to intervene and assert claims.

7. On or about August 3, 2008, Diane Jasek, Dennis Antolik and Dennis Jasek conducted a mediation. At the conclusion of the mediation, the parties entered into a hand-written agreement. *See* Defendant ("D") – 1. Under the Agreement, Dennis Jasek was to receive ownership of two (2) Grand Point lots in Pflugerville, Travis County, Texas, of an agreed value of $220,000. Dennis Antolik and Cheval Manor agreed in the Agreement to convey the two (2) Grand Point lots to Dennis Jasek no later than September 30, 2008. Dennis Jasek was to be paid $45,000 within one year from August 3, 2008, bearing three percent (3%) annual interest. Pursuant to the Agreement, Dennis Antolik would own 100% of the stock of Cheval Manor, Inc.

Dennis Antolik did not pay Dennis Jasek the $45,000 or interest on it. Dennis Antolik did not transfer the two (2) Grand Point lots to Dennis Jasek.

8. On or about August 30, 2008, Charles Daily, an attorney for Dennis Jasek, sent an email to counsel for Dennis Michael Antolik stating that there had not been a meeting of the minds and that no agreement had been formed. *See* Plaintiff ("P") – 3.

9. On September 17, 2008, the District Court of Travis County, Texas entered an Agreed Final Decree of Divorce in Case No. D-1-FM-05-001903. *See* D-3.

10. In connection with the Agreed Final Decree of Divorce, Diane Jasek and Dennis Antolik entered into an Agreement Incident to Divorce. *See* D-4.

11. On or about September 17, 2008, Diane Jasek transferred 667 shares of stock in Cheval Manor, Inc. to Dennis Antolik. *See* P-15.

12. On or about July 2, 2009, Cheval Manor, Inc. issued 1,000 shares of stock to Dennis Antolik. *See* P-16.

13. On or about October 23, 2009, Cheval Manor, Inc. conveyed the North 65' of Lots 1 and 2 and all of Lot 10, Block B, Three Points Acres, Sec. 1 to BJI, Inc. *See* P-4.

14. Cheval Manor, Inc. did not pay any of the sales proceeds from the October 23, 2009 sale to Dennis Jasek.

15. On March 10, 2010, Dennis Jasek filed suit against Dennis Antolik, Diane Jasek and Cheval Manor, Inc. in Case No. D-1-GN-10-000736. *See* D-10. Defendants Antolik and Cheval Manor filed answers in the state suit, and among other pleadings, alleged repudiation of the agreement by Dennis Jasek. *See* P-10. Discovery was conducted in the state court suit. On November 22, 2010, in the state court suit, Dennis Jasek filed a motion for partial summary judgment on its contract breach, to which motion both Defendants Diane Jasek and Dennis

Antolik filed a written response and affidavits, in which they provided evidence relating to their defenses and repudiation claims. *See* P-8 through P-10.

16. Prior to filing suit, Dennis Jasek did not make demand upon Dennis Michael Antolik for performance under the Agreement dated August 3, 2008.

17. On September 8, 2011, the District Court of Travis County, Texas entered judgment against Dennis Michael Antolik and Cheval Manor in the amount of $346,495.17. The judgment made the finding that Antolik and Cheval Manor failed to raise any affirmative defenses. In connection with such judgment, Dennis Jasek non-suited his claims for fraud. *See* P-12.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This is a case in which the Court may enter a final judgment.

This case is governed by 11 U.S.C. § 523(a)(2), (4) and (6).

Under 11 U.S.C. § 523(a)(2), it is the Plaintiff's burden of proof to establish the following elements:

    a. The defendant made a representation.

    b. It was knowingly false.

    c. The defendant intended to deceive the plaintiff.

    d. The plaintiff actually and justifiably relied upon the representation.

    e. Plaintiff was damaged by its justifiable reliance upon the false representation.

*In re Mercer*, 246 F.3d 391 (5th Cir. 2001).

Plaintiff states in his Complaint that Defendant obtained the two lots through the Settlement Agreement by use of false pretenses, false representations or actual fraud. Complaint at ¶ 14. Further, Plaintiff avers that he would not have entered into the Settlement Agreement had he known that Defendant was making false representations to him. *Id*.

There are five elements that a plaintiff must prove by a preponderance of the evidence to establish fraud under Section 523(a)(2). **Grogan v. Garner**, 111 S.Ct. 654 (1991). While the Complaint is deficient as to the operative facts to establish fraud, the proposed pre-trial orders, proposed findings of fact, and evidence at trial are sufficient for the Court to rule on the exception to discharge under Section 523(a)(2).

The Defendant did make a representation to the Plaintiff that he would pay Plaintiff $45,000 and convey two lots to him if Plaintiff signed the Settlement Agreement. There is no dispute that the representation was made.

The Court finds, however, that the Plaintiff has not met his burden on the second and third elements. There is no evidence that establishes at the time the Settlement Agreement was made that the Defendant's statements were false. Defendant was to pay Plaintiff money and transfer property as part of the Settlement Agreement in the future. After the Settlement Agreement was signed on August 3, 2008, Plaintiff's counsel sent Defendant's counsel a letter dated August 30, 2008, that stated, *inter alia*, that:

(1) "Jasek refuses to ratify any of the illegal actions taken by Dennis M. Antolik;"

(2) "there are several items of unfinished business, mainly relating to the Jacobson farm sale in January, 2007, which should be addressed in this agreement;"

6

(3) "no Forms 1120 for CM [Cheval Manor] have been filed for 2005-2007. Since these are ultimately the responsibility of the present stockholders, this matter should be covered in the Agreement;"

(4) "[t]he May, 2002 appraisal for $220,000 was suggested as the lot's current value. However, it now appears that appraisal was made high. . . ."

(5) "The changes I am proposing are intended to protect the best interests of CM's shareholders, DEJ (Plaintiff) and DMJ (sister). Since there was clearly no 'meeting of the minds . . .' with respect to the fair market value (FMV) of the Grand Point property, . . ."

*See* P-3. Plaintiff made no demand on Defendant to comply with the Agreement until a lawsuit was filed in state court roughly 18 months after the Settlement Agreement was executed.

There was no credible evidence to explain why the Plaintiff waited so long to act or why he made no demand on Defendant prior to filing suit. Moreover, there is no evidence to suggest that Defendant intended to deceive Plaintiff. The evidence provided to the Court indicates that the Defendant no longer thought he had a deal with the Plaintiff and, as such, the Defendant thought he could sell the lots and not pay the Plaintiff. While a clear breach of contract, the evidence does not support a finding of intent to commit fraud or deceive Plaintiff.

As to the fourth element regarding actual and justifiable reliance, the Court finds that the Plaintiff relied on the Defendant's representations to enter into a Settlement Agreement. In *Fields v. Mans*, 516 U.S. 59 (1995), the Supreme Court held that a bankruptcy court must use a justifiable, not reasonable person standard in determining the reliance element under § 523(a)(2). As such, this Court is required to determine, under the circumstances, whether the Plaintiff was justified in relying on the Defendant's statements. The Court finds that because the matter was

7

mediated and reduced to a handwritten agreement, Plaintiff was justified in relying on Defendant's representations that he would pay Plaintiff $45,000 and convey two lots to him.

Under the fifth element of Section 523(a)(2), the Court finds that the Plaintiff was damaged by the Defendant's failure to comply with the Settlement Agreement in that Plaintiff did not receive money or the lots.

The Defendant asserted that because Plaintiff had non-suited his fraud claim in state court, he was barred from asserting non-dischargeability of his claims for fraud. The Court believes that it is appropriate to discuss briefly whether the non-suit of the fraud claims in the state court action has collateral estoppel effect. Other than Defendant's assertion in his answer that it does have collateral estoppel effect, Defendant offers no argument in support of such claim. Collateral estoppel requires the following elements:

(a) the facts sought to be litigated in the second action were fully and finally litigated in the prior action;

(b) those facts were essential to the judgment in the first action; and

(c) the parties were cast as adversaries in the first action.

*In re Gober*, 100 F.3d 1195 (5th Cir. 1996).

Defendant made no showing as to how the first and second elements were met as to the fraud causes of action and, as such, the Court finds that collateral estoppel does not apply.[1]

Finally, the parties also litigated the issue of whether Plaintiff repudiated the Settlement Agreement with Defendant. Repudiation occurs when a party to a contract indicates by his words or action that he is not going to perform. ***Jenkins v. Jenkins***, 991 S.W. 2d 440, 447 (Tex.

---

[1] Curiously, the Plaintiff asserted that the state court judgment was collateral estoppel as to fraud because the state court used the language ". . . by Dennis Antolik fraudulently selling the Grand Point property . . ." in its findings as to breach of contract. Clearly, the judgment makes no legal conclusions as to fraud and specifically notes that the fraud counts were non-suited.

8

Civ. App.—Ft. Worth 1999, pet. denied). Repudiation must be shown to be an absolute and unconditional refusal to perform the contract without just excuse. ***Van Polen v. Winick***, 23 S.W. 3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied].

As noted herein, the Court finds that at a minimum Plaintiff made no attempt for over a year to enforce the Settlement Agreement. Further, Plaintiff's counsel's letter to the Defendant after the Settlement Agreement was signed shows that Plaintiff wanted to renegotiate the value of the lots to be conveyed. Moreover, the letter clearly indicates that Plaintiff recognized that there would be further documentation necessary to consummate the Agreement. Defendant's conduct between the date of the Settlement Agreement and through the date that Defendant sold the property evidences that the Defendant thought there was no agreement in place. As such, given the Plaintiff's inaction and the content of Plaintiff's counsel's letter to Defendant (P-3), the Court finds that Defendant believed that the contract had been repudiated. While the state court determined that the contract was not repudiated, this Court finds that Defendant thought that the Settlement Agreement was repudiated, which is relevant in determining Defendant's conduct or state of mind as to fraud.

The Court finds that consideration of whether the contract was repudiated is not dispositive of fraud. The Plaintiff has pled fraud, breach of fiduciary duty, and willful and malicious injury. Repudiation is an affirmative defense to whether a contract exists, not whether a cause of action for non-dischargeability exists. *See **El Paso Prod. Co. v. Valence Oper. Co.***, 112 S.W. 3d 616, 621 (Tex. Civ. App.—Houston [1st Dist.] 2003, pet. denied). Assuming that repudiation did not occur would simply mean that there was a breach of contract (as the state court found) and not fraud.

9

Breach of Fiduciary Duty or Defalcation – 11 U.S.C. § 523(a)(4)

Plaintiff alleges in his Complaint that Defendant, individually and as an officer, owner and director of Cheval Manor, Inc., was a fiduciary to Plaintiff at the time when the property under the Settlement Agreement should have been transferred to him. Complt. ¶ 13. Plaintiff asserts that Defendant breached that duty. Plaintiff further asserts that he objects to Defendant's discharge on the basis of defalcation in that Defendant's conduct regarding the sale of the lots was reckless.

Section 523(a)(4) does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. ***Walser v. Texas Music Group, Inc., et al. (In re Antone's Records, Inc.)***, 445 B.R. 758 (Bankr. W.D. Texas 2011).

Breach of Fiduciary Duty

In ***Antone's***, this Court held that a breach of fiduciary duty may only occur if a fiduciary relationship existed. *Id.* at 780. A fiduciary relationship may be based on formal or informal relations in which one person places a special confidence in another who, in equity and good conscience, is bound to act in good faith and with due regard for the interest of the person placing the confidence. *See* ***Texas Bank & Trust Co. v. Moore***, 595 S.W.2d 502, 507 (Tex. 1980); ***Lacy v. Ticor Title Ins. Co.,*** 794 S.W.2d 781, 788 (Tex. App.—Dallas 1990), writ denied, 803 S.W.2d 265 (Tex. 1991). The Fifth Circuit has held that a fiduciary duty is one of special trust or confidence arising prior to and apart from the transaction in question. ***In re Monnig's Dept. Store***, 929 F.2d 197 (5th Cir. 1991).

Informal Fiduciary Relationship

An informal fiduciary relationship may be created where a "special confidence" is placed in one person who "is bound to act in good faith and with due regard to the interests of the one reposing confidence." ***Antone's*** at 782, citing ***Texas Bank***, 595 S.W.2d at 507. Whether there is an informal fiduciary relationship is a question of fact based on the circumstances surrounding a "moral, social, domestic, or purely personal relationship." ***Thigpen v. Locke***, 363 S.W.2d 247, 253 (Tex. 1962). Further, an implied or technical trust can give rise to a fiduciary duty. ***In re Nazarko***, 2008 Bankr. Lexis 262 (Bankr. E.D. Tex., January 31, 2008).

Defalcation

The Fifth Circuit in ***In re Schwager***, 121 F.3d 177, 184 (5th Cir. 1997) stated that there is a long line of cases in the Circuit that have defined defalcation as "a willful neglect of duty, even if not accompanied by fraud or embezzlement" (citations omitted). The cases that the *Schwager* court reviewed all included some level of financial misconduct by a fiduciary. Further, the *Schwager* court observed that there has been some difficulty for the courts in determining what type of mental state or intent is necessary to qualify as defalcation. *Id*. at 185. The court noted that defalcation does not require actual intent, as does fraud. The Fifth Circuit found that defalcation does not rise to the level of embezzlement, fraud, or misappropriation, but it does require some level of mental culpability. *Id*. The court held that a willful neglect of fiduciary duty constitutes defalcation, which is essentially a recklessness standard. *Id*.

Further, the Fifth Circuit has held that the concept of a fiduciary duty is narrowly defined, applying only to technical or express trusts. ***Schwager***, 121 F.3d at 185, citing ***Angelle v. Reed (In re Angelle)***, 610 F.2d 1335 (5th Cir. 1980). A fiduciary duty must arise prior to and apart from the transaction in question. ***In re Monnig's Dept. Store***, 929 F.2d 197 (5th Cir. 1991).

11

The transaction in question is the mediated Settlement Agreement. The Settlement Agreement was in response to Plaintiff's intervention in the divorce proceeding between Defendant and Diane Jasek. The record and evidence at trial does not establish a special relationship or trust prior to the Settlement Agreement. In fact, none is pled. Plaintiff alleges that his involvement or relationship with Defendant was that of an investor in Cheval Manor, Inc. Plaintiff admitted at trial that he had no stock certificates to evidence that he was a shareholder in Cheval Manor. Rather, Plaintiff asserts that he can prove he was a shareholder in Cheval Manor through other documents and his testimony.

Prior to Cheval Manor becoming a corporate entity, Plaintiff, Defendant, and Diane Jasek were involved in an entity known as West Austin Group ("WAG"). According to the Defendant, WAG was incorporated in February 19, 1996. *See* P-26. Diane Jasek was the sole shareholder and director. Defendant testified that Plaintiff became a one-third owner of stock in WAG. Nonetheless, Antolik stated that Plaintiff did not receive any actual shares of stock. WAG had previously filed an assumed name certificate for WAG to conduct business as Cheval Manor, Inc. on January 13, 1994. *See* P-27.

Plaintiff testified that he was a one-third owner in WAG and that he paid money to Dennis Antolik and Diane Jasek over time to be used in an unspecified manner for Cheval Manor. Plaintiff acknowledged that he had no stock certificates or corporate papers such as bylaws evidencing any stock ownership in Cheval Manor. There is a ledger account for Cheval Manor that evidences that Plaintiff contributed money or loaned Cheval Manor funds prior to June 21, 1997. *See* P-32. Plaintiff further testified he paid $250,000 to Antolik and his sister in the form of loans or shareholder contributions but does not recall getting a K-1 from Cheval

Manor, Inc. Moreover, pursuant to the Settlement Agreement, Plaintiff did not receive any document evidencing his stock ownership in Cheval Manor, Inc.

Dennis Jasek argues that corporate tax returns (Form 1120) evidence that he had a shareholder interest in Cheval Manor. That said, the 1995 Form 1120 for Cheval Manor indicates a $106,291 shareholder loan to Cheval Manor but the only person listed having stock ownership is Diane Jasek. *See* P-34. Further, the 2000 Form 1120 for Cheval Manor indicates shareholder loans of $297,140 and that Diane Jasek owned at least two-thirds of the stock. Plaintiff is not mentioned in either return. When WAG transferred its real property to Cheval Manor through a sale in August 11, 1995, Diane Jasek became the 100% owner of stock in Cheval Manor, Inc. *See* P-25. There was no conveyance of stock from WAG to Cheval Manor.

The evidence does not establish by a preponderance of the evidence that the Defendant had a fiduciary duty to Plaintiff. The record does not show that there was any formal or informal trust relationship between Antolik and Jasek. Plaintiff asserts that because he was a shareholder in Cheval Manor and that Antolik was both an owner and director, that Antolik had a fiduciary duty to Dennis Jasek. *See* **Milam v. Cooper Co.**, 258 S.W. 2d 953 (Tex. Civ. App.—Waco, 1953, writ ref'd n.r.e.). There is no documentary proof that shows Plaintiff was a shareholder in Cheval Manor nor could Plaintiff provide competent testimony to establish that he owned stock in Cheval Manor, Inc. that was more credible than Defendant's assertion he did not. Without a finding of a breach of fiduciary duty, there can be no finding of fraud or defalcation under Section 523(a)(4).

Willful and Malicious Injury to Plaintiff or his Property – 11 U.S.C. § 523(a)(6)

Plaintiff asserts that Defendant committed willful and malicious injury to Plaintiff and his property. Complt. ¶ 16. Plaintiff further asserts in his trial brief (ECF 14) that Defendant sold

the lots when the Settlement Agreement obligated him to do otherwise. Defendant asserts that because he believed that the Agreement was repudiated, his sale of the property cannot be considered willful and malicious.

Section 523(a)(6) provides that an individual debtor will not get a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." For the act to be willful and malicious "a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." ***In re Williams***, 337 F.3d 504, 508-09 (5th Cir. 2003) (citing ***In re Miller***, 156 F.3d 598, 603 (5th Cir. 1998)). Whether the acts were substantially certain to cause injury (the "objective test") is based on "whether the Defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the Plaintiff." ***In re Powers***, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009) (emphasis in original). A subjective motive to cause harm (the "subjective test") exists when a tortfeasor acts "deliberately and intentionally, in knowing disregard of the rights of another." *See **In re Miller***, 156 F.3d at 605-06 (adopting the definition of "implied malice" from ***In re Nance***, 566 F.2d 602, 611 (1st Cir. 1977)).

The Supreme Court has determined that the word "willful" under Section 523(a)(6) modifies the word "injury," indicating that a finding of nondischargeability requires a deliberate or intentional injury, not merely a deliberate act that results in injury. ***Kawaauhua v. Geiger***, 523 U.S. 57, 61 (1998). In defining the term "malicious" under Section 523(a)(6), the Fifth Circuit holds that it means "implied malice," as opposed to "special malice." ***In re Miller***, 156 F.3d at 605. "Implied malice" means "acts done with the actual intent to cause injury," whereas "special malice" requires a showing of a motive to harm. ***Id.*** The Fifth Circuit, in recognizing

14

that the definition of implied malice is the same standard used by the Supreme Court for "willful injury," held that a finding of implied malice can render a debt nondischargeable under Section 523(a)(6). *Id.* (discussing *Kawaauhua*, 523 U.S. 57).

The Defendant's conduct was not willful and malicious under the objective test. There was no evidence produced that showed that Defendant intended to harm Plaintiff; it was that Defendant committed deliberate acts that resulted in an injury to Plaintiff. The Defendant testified at length how he believed that the Settlement Agreement had been repudiated and that the Plaintiff had decided not to pursue enforcement of the Agreement.

Under the subjective test, the Plaintiff must show that the Defendant acted deliberately and intentionally with knowing disregard of the Plaintiff's rights. The court finds the Plaintiff has not met his burden under the subjective test because the Plaintiff has not shown that Defendant acted in disregard of Plaintiff's rights. *See Miller* at 605-06. Clearly, the Defendant acted deliberately when he sold the two lots to a third party and did not pay Plaintiff $45,000. That said, the Court finds Defendant's testimony credible that he thought the Settlement Agreement repudiated and, as such, he did not "disregard the rights of another" when he sold the two lots.

## CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff's Complaint pursuant to Section 523(a)(2, 4, and 6) is DENIED. Each party is to bear their own costs. The Court further finds that separate take nothing judgment shall be awarded Plaintiff. All other relief is DENIED.

# # #